UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ANDERSON WELLS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 2:21-cv-1456-AMM |
| | ) |
| **CITY OF BIRMINGHAM** | ) |
| **POLICE DEPARTMENT and** | ) |
| **SERGEANT WILLIAM** | ) |
| **BLACKWELL,** | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

This case comes before the court on a motion to alter, amend, or vacate judgment filed by Plaintiff Anderson Wells. Doc. 30. Specifically, Mr. Wells moves for the court to "vacate the order granting summary judgment and . . . enter a new order denying summary judgment." *Id*. at 16. For the reasons explained below, the motion is **DENIED**.

### I.   BACKGROUND

Mr. Wells brought this action against Defendants Sergeant William Blackwell ("Sergeant Blackwell") and the City of Birmingham ("the City") under 42 U.S.C. §1983 for the violation of the Equal Protection Clause (Count One) and the Due Process Clause (Count Two). Doc. 1. Mr. Wells alleged constitutional violations based on the discipline he received for five separate incidents. *Id*. ¶¶ 14–22, 26–30,

36–39, 44–45, 53–55. Mr. Wells alleged that "[w]omen who committed the same alleged offenses were treated differently than [himself] as they did not receive the same discipline." Doc. 1 ¶ 70. Mr. Wells referred to the disciplinary incidents at issue as the "food cart incident," the "lockdown incident," the "incident with Tonya Wright," the "sleeping incident," and the "Echols incident." Doc. 28 at 2.

The Defendants moved for summary judgment. Doc. 19. The court granted summary judgment in favor of the Defendants on both Section 1983 claims. Doc. 28. Regarding Mr. Wells's Equal Protection Clause claim under Section 1983, the court held that Mr. Wells established a *prima facie* case of discrimination for only the Echols incident. *Id*. at 23. The court further held that Mr. Wells did not establish municipal liability for the City, *id*. at 23–25, and that Sergeant Blackwell is entitled to qualified immunity. *Id*. at 27.

Mr. Wells filed a motion to alter, amend, or vacate judgment, asserting errors that relate to summary judgment as to his Section 1983 claim based on the Equal Protection Clause, not his Section 1983 claim based on the Due Process Clause. *See* Doc. 30. Defendants filed a response to the motion. Doc. 32. Mr. Wells did not file a reply.

## II.   LEGAL STANDARD

Federal Civil Procedure Rule 59(e) authorizes district courts to "alter or amend" judgment after its entry. "The only grounds for granting a Rule 59 motion

are newly-discovered evidence or manifest errors of law or fact." *PBT Real Est., LLC v. Town of Palm Beach*, 988 F.3d 1274, 1287 (11th Cir. 2021) (cleaned up). "Rule 59(e) may not be used to relitigate old matters, or to raise argument or present evidence that could have been raised prior to the entry of judgment." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1313 (11th Cir. 2023) (cleaned up).

### III.  ANALYSIS

Mr. Wells argues that the court committed manifest errors of law and fact in granting summary judgment. Doc. 30 at 5. Mr. Wells makes four arguments. First, he asserts that "[t]he court's determination [that] [he] did not argue *Quigg* or convincing mosaic is manifest legal error." *Id.* (cleaned up). Second, he asserts that "[a] determination that supervisory referrals are not adverse actions is a manifest legal error and unjust." *Id.* at 7 (cleaned up). Third, he asserts that "[t]he court omitted favorable evidence, weighed evidence and erroneously applied a 'nearly identical' standard in the analyses of whether an employee was a comparator[,] which is a manifest error of law and fact." *Id.* at 11 (cleaned up). Fourth, he asserts that "[t]he court erroneously stated [he] only argued a policy or custom and did not argue the violations were based on actions of the decisionmaker when determining Monell liability." *Id.* at 14 (cleaned up).

Although Mr. Wells initially asserts that "omitting favorable facts or weighing facts to conclude Sergeant Blackwell did not participate in the constitutional

3

violations" was another manifest error, *id*. at 5, he does not provide any explanation of how the court omitted favorable facts or weighed facts to reach that conclusion. The only other place in the brief that Mr. Wells mentions Sergeant Blackwell is when he asserts that "[Sergeant] Blackwell wrote up the incidents with Green and Wright different[ly] than [his] during the lock down incident." *Id*. at 15.

Mr. Wells fails to present a basis for altering, amending, or vacating summary judgment in favor of the City and Sergeant Blackwell on his Section 1983 claim alleging violations of the Equal Protection Clause.

### A. Supervisory Referrals

In challenging the holding that "supervisor referrals were not adverse actions," Doc. 28 at 18, Mr. Wells asserts arguments that he could have raised at summary judgment. *See* Doc. 30 at 8–11. Moreover, the cases he cites from other circuits (namely, the Fifth, Sixth, and D.C. Circuits) are not binding precedent. *See id*. The fact that the Supreme Court "has granted certiorari and invited briefing on whether there must be a 'tangible employment action'" does not establish precedent. *Id*. at 11. Accordingly, there is no basis to alter, amend, or vacate granting "the Defendants' motion for summary judgment . . . as to the claims [under the Equal Protection Clause] that are based on . . . supervisory referrals." Doc. 28 at 18.

### B. Analysis of Comparators

4

Evidence that Mr. Wells asserts the court "omitted" or "weighed," *see* Doc. 30 at 12–14, is consistent with the court's conclusion that the record did not establish proper comparators for Mr. Wells except for the Echols incident. *See* Doc. 28 at 23. Proffered comparators must be "similarly situated in all material respects," which ordinarily means that the comparator and the plaintiff "will [] have engaged in the same basic conduct or misconduct, be subject to the same employment policies, have the same supervisor(s), and share an employment or disciplinary history." *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022).

The court held that Tameeka Marshall was not a proper comparator for the food cart incident, "because there is no evidence that [she] engaged in similar misconduct as" Mr. Wells by kicking over the food cart. Doc. 28 at 19. The court held that Tonya Wright and Markeeta Green were not proper comparators for the lockdown incident "because there is no evidence that they engaged in similar misconduct as" Mr. Wells by attempting physically to leave the premises during lockdown. *Id.* at 20.

Evidence that Mr. Wells asserts the court ignored does not show that Ms. Marshall, Ms. Wright, and Ms. Green engaged in similar misconduct as Mr. Wells. Mr. Wells cites evidence that Ms. Marshall "started [the food cart incident] by opening the door in violation of policy, [and] leaving the cart in the doorway." Doc. 30 at 12. That Ms. Wright and Ms. Green "attempted to leave by saying they wanted

5

to leave and cursing at their supervisors when told not to" does not show that they made a physical attempt to leave. *Id*. at 12–13. Mr. Wells asserts that his proffered comparators engaged in similar misconduct by characterizing the misconduct so broadly that distinctions in degree or kind are lost. *See Berry*, 84 F.4th at 1312 ("Because [the plaintiff] cannot prove that other employees engaged in a similar degree of misconduct, she lacks evidence of better treatment of similarly situated employees."). Although the evidence Mr. Wells cites might explain the reason for his actions, it does not affect whether his actions were sufficiently similar to those of his proffered comparators.

As for the Tonya Wright incident, for which Mr. Wells and Ms. Wright received the same discipline, the court held that "district courts in this Circuit do not examine the diminutive differences that lie within the employer's reasonable discretion—such as whether the comparator's conduct was less or more egregious than the plaintiff's conduct." Doc. 28 at 20–21 (cleaned up). Favorable evidence that Mr. Wells asserts that the court omitted concerns such diminutive differences. *See* Doc. 30 at 13. Finally, Mr. Wells asserts that the court omitted favorable evidence regarding whether Ms. Wright was a comparator for the Echols incident. *Id*. at 14. But the court held that Ms. Wright was a proper comparator for the Echols incident. Doc 28 at 23.

6

Accordingly, there was no manifest error of law or fact in the court's analysis of comparators at summary judgment.

### C. Municipal Liability and Qualified Immunity

Assuming *arguendo* that Mr. Wells "presented the evidence and arguments which are applicable under all three theories" of *McDonnell Douglas*, convincing mosaic, and mixed-motive, Doc. 30 at 6, whether Mr. Wells established a *prima facie* case of discrimination was not the end of the court's analysis at summary judgment. The court held Mr. Wells failed to establish municipal liability for the City, Doc. 28 at 23–25, and that Sergeant Blackwell is entitled to qualified immunity. *Id.* at 25–27. There was no manifest error of law or fact in either holding, regardless of whether Mr. Wells established a *prima facie* case of discrimination for more than one disciplinary incident under other theories of proving intentional discrimination.

When a plaintiff asserts a Section 1983 claim, "[a] municipality may not be held liable for the tort of its employees on a *respondeat superior* theory." *Lewis v. City of Union City*, 934 F.3d 1169, 1190 (11th Cir. 2019). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [Section] 1983." *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022) (quoting

7

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). A plaintiff can establish municipal liability by: "(1) identifying an official policy; (2) identifying an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law; or (3) identifying a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights." *Id.*

At summary judgment, Mr. Wells asserted: "Females are not being written up by their supervisors, and [Internal Affairs Division] [("IAD")] is not amending the formal complaints when violations against females are found. This consistent favoritism is so widespread it is a custom. Thus, Wells can establish [municipal] liability." Doc. 26 at 37. The court held that Mr. Wells "appears to be proceeding under the second way [for establishing municipal liability]." Doc. 28 at 24.

Mr. Wells now asserts that the court "erroneously stated [he] only argued a policy or custom and did not argue the violations were based on actions of the decisionmaker when determining [municipal] liability." Doc. 30 at 14 (cleaned up). He asserts that he "argue[d], in substance, the decision[-]makers with final policy making authority violated [his] constitutional rights and the favoritism is so widespread it is a policy or custom." *Id.*

Mr. Wells did not argue that officials with final decision-making authority violated his constitutional rights, even "in substance." At summary judgment, Mr.

8

Wells asserted that "the City's policy allows the [s]upervisor[]s a substantial amount of discretion as to whether or not to write a violation or provide a letter of counseling, what language is placed in the written violations, and whether to interview both sides before preparing the violation." Doc. 26 at 36. Mr. Wells further asserted that "[t]he City's decisionmaker IAD also has discretion to amend the formal complaint to include charges against those who are determined to have violated rules and policies during its investigation." *Id*. Thus, the only decision-makers that Mr. Wells identified as systematically favoring females were "supervisors" and the "IAD." He did not argue or show that "supervisors" or the "IAD" had final decision-making authority regarding discipline. *See id*. at 36–37.

"[A] municipal official does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review." *Chabad*, 48 F.4th at 1230 (cleaned up). Mr. Wells did not argue or show that "supervisors" or the "IAD" had unreviewable authority over disciplinary actions such as suspensions. According to Mr. Wells, a supervisor initially "write[s] up" an incident, and the IAD investigates the incident "rel[ying] upon the supervisor's reports." Doc. 26 at 9. That is, "[a] supervisor controls what language is used . . . to report the incident[,]" and "IAD relies upon supervisors to write up fairly what transpired between the parties." *Id*. The Chief of Police receives "a copy of the IAD investigation summary," and a hearing takes place where the

9

Chief of Police "reads the allegations" against an employee at a hearing and "asks the employee for their position." *Id.*

Captain Rockett, the commander of the IAD, testified that the IAD "do[es] not provide a recommendation for discipline," Doc. 18-2 at 8, which Mr. Wells did not dispute at summary judgment. *See* Doc. 26. The Defendants asserted in their motion for summary judgment that the Chief of Police and Deputy Chiefs of Police "made the decision to suspend" Mr. Wells for different incidents, Doc. 20 ¶¶ 6, 14, 23, 38, which Mr. Wells did not dispute. *See* Doc. 26 at 5–7. Nor did Mr. Wells dispute as a general matter that a disciplinary decision may be appealed—he asserted only that an employee "can only appeal decisions if you are awarded more than three days." Doc. 26 at 10.

To the extent that Mr. Wells relied on decisions made by supervisors or the IAD to establish municipal liability, Mr. Wells had to show that a reasonable jury could find "an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law." *Chabad*, 48 F.4th at 1229. That is, Mr. Wells had to develop evidence sufficient to support a reasonable inference of "a policy or custom of constitutional violations so persistent and widespread as to be deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1312 (11th Cir. 2011) (cleaned up). Mr. Wells failed to do so.

Although Mr. Wells asserted at summary judgment that "all the supervisors treat women with more respect and give them the benefit of the doubt over men," Doc. 26 at 9, he did not develop evidence to support this assertion. When Mr. Wells was asked at his deposition "who specifically do you think favors the women and will give them that benefit of the doubt," he did not name anyone. Doc. 18-1 at 24 (Mr. Wells testifying "I can't recall specific names. It's just events and incidents where certain supervisors are . . . just pushing it their way in favor of them. It's just certain supervisors.").[1]

Mr. Wells also distinguished other supervisors from Sergeant Blackwell in their treatment of him: Mr. Wells asserted that "when Sergeant Harden did write him up, he told [Mr.] Wells that he didn't want to do it." Doc. 26 at 20. Mr. Wells further asserted that Lieutenant Greenberg told him "everything was fine" after the food cart incident. *Id.* at 17. When asked at his deposition why he specifically identified Sergeant Blackwell as a defendant in this case, Mr. Wells responded, "Because, as you see, I got like five 131s and write-ups where I got a total of around 30 days off, and all this happened within a year, and all this happened during the time that Sergeant Blackwell arrived at the jail." Doc. 18-1 at 24.

---

[1] When asked who those "certain supervisors" were, Mr. Wells testified: "It's on the daily, ma'am. It's on the daily, ma'am. It's on the daily. It's on the daily." Doc. 18-1 at 24.

Assuming without deciding that Sergeant Blackwell acted with discriminatory intent against Mr. Wells on more than one occasion, no reasonable jury could find that the discriminatory conduct of a single supervisor against a single male corrections officer establishes a municipal policy or custom of discriminating against male corrections officers. In *Craig*, the Eleventh Circuit held that the plaintiff failed to establish a municipal policy or custom of "relying on hospital clearance forms" when "[his] only proof of this alleged custom [was] that, on at least three occasions, [a nurse] treated [him] based on the medical clearance form." 643 F.3d at 1312. That is, the plaintiff "presented no evidence that [the defendant] relied on medical clearances for other detainees." *Id*. The court held that "[a]t most, [the plaintiff's] evidence, which involves the evaluation of a single detainee by a single nurse, would tend to prove a single incident of unconstitutional activity[,]" which is "not sufficient to impose liability." *Id*. (cleaned up).

Mr. Wells's assertion that the IAD did not "amend[] the formal complaints when violations against females [were] found," Doc. 26 at 37, likewise fails to establish a persistent and widespread pattern of discriminating against male corrections officers. Even if the IAD failed to amend the complaint when violations against female corrections officers were found, the IAD's lenient treatment of female corrections officers does not by itself establish discrimination against male corrections officers. This is particularly so given Mr. Wells's assertion that when

12

"[t]he investigation revealed [Officer] Echols attempted to physically attack Wells, . . . the IAD did not amend the [complaint] to include those allegations." Doc. 26 at 24. Officer Echols is a male corrections officer. Doc. 28 at 22. Accordingly, there was no manifest error of law or fact in the court's holding that a reasonable jury could not infer liability for the City based on the record at summary judgment.

The same is true of the court's holding that Sergeant Blackwell is entitled to qualified immunity. *Id.* at 27. Because Mr. Wells did not contest Sergeant Blackwell's assertion that he "was acting within the scope of his duties" during the events relevant to this action, *id.* at 26, the burden was on Mr. Wells to establish that qualified immunity does not apply. *See Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir. 2003) ("Once the public official has established that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity does not apply.")

"To overcome a qualified immunity defense, the plaintiff must make two showings." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019). "First, [he] must establish that the defendant violated a constitutional right." *Id.* (cleaned up). "Second, [he] must show the violated right was clearly established." *Id.* (cleaned up). "Although . . . courts were once required to consider the first prong before the second, they are now permitted to exercise their sound discretion in deciding which

13

of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* (cleaned up).

"A government official's conduct violates clearly established law when, at the time of the alleged conduct, the contours of the right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1146 (11th Cir. 2017) (cleaned up). "The salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Id.* (cleaned up). "That standard does not require a case directly on point, but existing precedent must have placed the constitutional question beyond debate." *Id.* (cleaned up). "[O]fficials are not obligated to be creative or imaginative in drawing analogies from previously decided cases, and an official's awareness of the existence of an abstract right does not equate to knowledge that *his* conduct infringes the right." *Corbitt*, 929 F.3d at 1311–12 (cleaned up).

At summary judgment, Mr. Wells argued that Sergeant Blackwell "personally participated in the discriminatory discipline" by writing up the lockdown incident differently for himself than Ms. Wright and Ms. Green, and "put[ting] pressure on [Sergeant] Harden to document the sleeping incident." Doc. 26 at 43. Mr. Wells also suggested that Sergeant Blackwell was to blame for the fact that "[Lieutenant] Greenberg told [him] everything was fine, then he was called back up to be referred

14

to Behavioral [H]ealth with [Sergeant] Blackwell sitting there." *Id.* Assuming the truth of these assertions, Mr. Wells did not meet his burden of clearly establishing the unconstitutionality of Sergeant Blackwell's actions.

The cases that Mr. Wells cited established an abstract right "to be free from gender discrimination in the workplace" and the "right to be free from discriminatory discipline." *Id.* at 42. The cases did not establish that Sergeant Blackwell violated Mr. Wells's constitutional rights by writing up an incident or pressuring someone else to write up an incident, when such write-ups formed only the basis for the IAD's investigation and Sergeant Blackwell did not himself recommend or decide what disciplinary action Mr. Wells would ultimately receive. *See Jones v. Gerwens*, 874 F.2d 1534 (11th Cir. 1989) (Title VII action involving a police sergeant who recommended that the plaintiff be suspended and the Chief of Police who acted on that recommendation to suspend him); *Burke-Fowler v. Orange Cnty.*, 447 F.3d 1319 (11th Cir. 2006) (Title VII action involving wrongful discharge, without allegations involving writing up of disciplinary incidents).

Mr. Wells's discussion of *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) suggests misleadingly that Sergeant Blackwell is not entitled to qualified immunity because he "personally participated in . . . discriminatory discipline." Doc. 26 at 43. In *Brown*, a prisoner brought a Section 1983 action against the jail supervisor, alleging constitutional violations based on "unclean drinking water and

15

sleeping on the floor." 906 F.2d at 670. The court thus addressed whether what potential liability the jail supervisor could have to a prisoner for those conditions at the jail. First, the court held that "[it] is axiomatic, in section 1983 actions, that liability must be based on something more than a theory of respondeat superior." *Id*. at 671. The court then held that "[s]upervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Id*. ("The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.").

Although Sergeant Blackwell was Mr. Wells's supervisor, there were others above Sergeant Blackwell in the chain of command. *See* Doc. 28 at 2 ("Sergeant Blackwell reported to Lieutenant Greenberg"); Doc. 26 at 7 ("The chain of command from bottom to top is: Corrections Officer (CO), Sergeant, Lieutenant, Captain, Chief's Assistant (Police Sergeant), Jail Commander, Chief of Police[.]"). Sergeant Blackwell did not have supervisory liability over his supervisors' decisions to suspend Mr. Wells. Moreover, Mr. Wells did not argue, and the record did not support, that Sergeant Blackwell assisted in the implementation of a "plan" to discriminate against him. *See Bryant v. Jones*, 575 F.3d 1281, 1297 (11th Cir. 2009) (Section 1983 case involving a Chief Executive Officer's "plan" to create a hostile

work environment for white employees and the "assistance" that others provided to "implement[]" that plan).

Accordingly, there was no manifest error of law or fact in the court's holding that Sergeant Blackwell is entitled to qualified immunity.

IV. **CONCLUSION**

For the reasons stated above, Mr. Wells's motion to alter, amend, or vacate judgment is **DENIED**.

**DONE** and **ORDERED** this 18th day of March, 2024.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE